IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00268-RBJ

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**CLIFFORD LEWIS,**

       **Defendant.**

---

**DEFENDANT'S OBJECTIONS TO THE
PRESENTENCE INVESTIGATION REPORT**

---

Clifford Lewis, through Assistant Federal Public Defender Laura H. Suelau, submits the following objections and responses to the Presentence Investigation Report (PSR). Doc. 69.

**I. Objections and clarifications not impacting the guideline calculation.**

    **1. Paragraph 5 –** This paragraph contains allegations concerning Mr. Lewis's conduct while on pretrial release at Emmy's House. First, Mr. Lewis denies ownership of the items located in his room, a space he shared with other occupants of Emmy's House and accessible to all staff and clients of the house.

Second, although he does not deny performing welding projects in in the attached garage, he was performing those projects for his employer, and he denies ever inquiring about a detonator – that allegation is untrue and lacks any indicia of reliability. The PSR is silent as to the source of that information, i.e., with whom Mr. Lewis inquired about the detonator. Therefore, that allegation is just that, an allegation without additional indicia of reliability. It should not be considered by this court and should be stricken from the PSR.

A court may only consider evidence bearing "some minimal indicium of reliability beyond

mere allegation." *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990); *accord* U.S.S.G. § 6A1.3 (evidence used at sentencing must have "sufficient indicia of reliability to support its probable accuracy"). Thus, factual findings cannot be based solely on unreliable or unsupported allegations. *United States v. Castillo,* 8 F.4th 68 (2021). Factors for this Court to consider in determining whether hearsay evidence offered at sentencing is sufficiently reliable include: (1) whether the witness testifying at the sentencing hearing *personally* had the opportunity to observe an out-of-court declarant's "demeanor and [to] form an opinion regarding their veracity" and (2) whether the out-of-court statements are corroborated through independent evidence. *See Cook*, 550 F.3d at 1297. Here, the allegation that Mr. Lewis was "inquiring about a 'detonator'" lacks any evidence of reliability. The probation officer did not personally hear Mr. Lewis make that inquiry and it is not supported by independent evidence.

   2. **Paragraph 16** – Mr. Lewis denies ownership of some of the items found in his vehicle including heroin, methamphetamine, and prescription drugs. When he was contacted by the police in connection with the instant offense, he reported that other people's belongings, as well as his own, were in the vehicle. Consistent with that, prescriptions belonging to other individuals were found in the car as were items belonging to a woman (based on their character). Photographs of some of that evidence, taken by Federal Public Defender Investigator David Staub at the Loveland Police Department, are below.







3.  **Paragraph 17 –** Mr. Lewis denies any gang membership or affiliation including membership in the Aryan Brotherhood. Consistent with that denial, staff at FDC Englewood, where Mr. Lewis was incarcerated from May 2022 to August 2022, reported that Mr. Lewis has "no known gang affiliation." Mr. Lewis requests that information be struck from the PSR lest the BOP rely on that information and erroneously place him in a facility and housing unit with members of the Aryan Brotherhood, a gang with which he has no affiliation.

4.  **Paragraph 97 –** Mr. Lewis did not say (or did not intend) that he "gets bored with doing good." Instead, he offered the insight that he can get complacent when he begins to feel "good" being sober. In retrospect, he realizes that complacency undercuts his sobriety. Instead, he needs to, and intends to, continue utilizing those tools that helped him get sober to also help him stay sober.

**II. Objections impacting the guideline calculation.**

5.  **Paragraphs 30-32 –** Mr. Lewis agrees with the probation officer that U.S.S.G. § 2K2.1(b)(6)(B) does not apply and the proper total offense level is 19. The government filed an Objection, Doc. 70, alleging "there is sufficient evidence that Lewis's possession of firearms facilitated a felony menacing in violation of C.R.S. § 18-3-206(a)." That objection should be overruled.

As a threshold matter, the Loveland Police Department, those officers investigating the incident in question on April 22, 2021, disagree with the government's position. After his traffic stop, Mr. Lewis was arrested pursuant to an Affidavit in Support of a Warrantless Arrest. Exhibit A. That Affidavit alleges a number of violations, but not felony menacing. Mr. Lewis was not then, nor in the five months between April 22, 2021 and his arrest in the instant case, charged with felony menacing. Therefore, those officers who investigated the conduct at issue did not believe Mr. Lewis engaged in felony menacing. The government's post-hoc analysis 18 months later is unavailing. There are a few reasons why Mr. Lewis was likely not charged with felony menacing and should not now be found to have committed that offense.

First, there was and is insufficient evidence that Mr. Lewis was in fact aiming a gun. The government's own objection concedes that only context clues, not clear evidence, support the notion that he was pointing a gun (not a cell phone or other object). The screenshot they provide and conventionally submitted video are far from clear. Officer Berry, the officer who reviewed the gas station surveillance footage soon after the incident, told the gas station clerk "it's hard to see," and "these cameras are not the greatest." *See* Doc. 42. When asked by the police, Mr. Lewis stated that he had a phone in his hand, not a gun. Mtn Hearing Trans. p. 6. The only evidence that object was a gun comes from gas station employees who may not have been in a position to clearly observe the object.

Second, Mr. Lewis agrees with the PSR's assessment that *if* he aimed a weapon, it was in response to the actions of the black Nissan's driver. There is abundant evidence that Mr. Lewis aimed the object in self-defense. Mr. Lewis told police in his Mirandized interview that the incident began when the Nissan followed him closely from his friend's house. He became concerned and pulled into the gas station to get away, but the Nissan followed. The government's conventionally submitted exhibit (INV_263) shows Mr. Lewis pulling into the gas station from the road at approximately 1:18:01 PM. The Nissan (black with tinted windows) can be seem tailing him closely. Another surveillance

camera from the gas station (not submitted by the government) captures the Nissan quickly rounding the corner and pulling into the station via another entrance at 1:18:17 PM.



The surveillance videos do not have audio and did not capture what happened next. But Mr. Lewis reported to the police that when he began to approach the Nissan, the driver audibly revved the engine before accelerating and trying to run him over. The driver's aggression after revving the engine is plainly visible in the government's exhibit and the 911 caller to first report the incident told the operator the same: "[the Nissan] almost ran [the driver of the Durango] over."

For those reasons, the court should overrule the government's objection and not apply the four-level increase contemplated by § 2K2.1(b)(6)(B).

### III. Objection to Special Conditions of Supervised Release.

6. **Special Condition 3 – Medication**

The probation officer proposes: "In conjunction with mental health treatment, you must remain medication compliant and take all medications that are prescribed by your treatment provider." To justify that condition, they state: "special condition requiring medication compliance is warranted

6

based on the needs of his respective diagnoses and history of medication ingestion." Mr. Lewis has been diagnosed with depression, anxiety, and PTSD. His medication ingestion history is as follows:

1. In 2009 he was prescribed medication which he ingested (as prescribed) for two years. He did not feel the medication was beneficial. ¶ 82.

2. In March 2022 he was prescribed three medications at Denver County Jail. He took those medications and felt they were beneficial. ¶ 83.

3. In May 2022, he was transferred to the FDC where he was told that the three medications he was prescribed were unavailable and was instead offered two different medications without a medical evaluation. He declined to take those medications. ¶ 84.

### A. Applicable Legal Standard.

Imposition of conditions of supervised release is governed by 18 U.S.C. § 3583(d). That Section provides that the Court may order a special condition of supervised release, provided such condition:

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves *no greater deprivation of liberty than is reasonably necessary* for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a).

18 U.S.C. § 3583(d) (emphasis added). Interpreting this Section, the Tenth Circuit has required "conditions of supervised release to be linked to the offense and be no broader than necessary to rehabilitate the defendant and protect the public." See *United States v. Smith*, 606 F.3d 1270, 1282 (10th Cir. 2010). The Tenth Circuit has recognized several specific conditions that affect a significant liberty interest and require elevated scrutiny. These include requiring participation in residential treatment, requiring penile plethysmograph testing, and the forced administration of psychotropic medication. *Id.*; *see also United States v. Fivaz,* 521 Fed. Appx. 696, 701-02 (10th Cir. April 15, 2013) (unpublished).

The imposition of such conditions cannot be delegated to a third-party such as a treatment provider. Instead, "any condition that affects a significant liberty interest… must be imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish sentencing goals." *Mike,* 632 F.3d at 696.

In addition to statutory requirements, conditions of supervision must also "comport with the relevant constitutional provisions." *Id.* Chief among these is the Due Process Clause of the Fifth Amendment. The Supreme Court has made clear that individuals (including pre-trial detainees and convicted criminals) have a "constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs – an interested that only an essential or overriding state interest might overcome." *Sell v. United States,* 539 U.S. 166, 178-79 (2003) (internal quotation marks omitted); *see also Washington v. Harper,* 494 U.S. 210, 221-22 (1990) ("We have no doubt that ... respondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."). Among the governmental interests that may be sufficiently important to support an order for involuntary medication are the need to protect the individual and others from the individual's potentially dangerous behavior, *see Riggins v. Nevada,* 504 U.S. 127 (1992); *Harper,* 494 U.S. at 225-26; and the government's interest in rendering a criminal defendant competent to stand trial. S*ee Sell,* 539 U.S. at 179-80

**B. Forced medication compliance is not warranted in this case.**

Mr. Lewis has no objection to mental health treatment and agrees that condition (Special Condition 2) is appropriate to address his mental health diagnoses. He also has no objection to medication *per se.* However, the involuntary administration of medication involves a greater deprivation of Mr. Lewis's liberty than is reasonably necessary and there is no governmental interest, let alone important governmental interest, supporting an order of its involuntary administration. *Harper, Riggins* and *Sell* are unequivocal: the involuntary administration of anti-psychotic drugs involve

a substantial deprivation of liberty. As a general matter, an involuntary-medication order is constitutionally impermissible "absent a finding of overriding justification *and* a determination of medical appropriateness." In the 18 U.S.C. § 3583(d) context, that overriding justification might be found if medication were necessary to deter criminal activity, protect the public, and promote Mr. Lewis's rehabilitation. It is not.

The fact that Mr. Lewis has previously taken medications for his depression, anxiety, and PTSD on two occasions, and opted not to take medications on a third, does not support the need for involuntary medication. Quite the opposite. Mr. Lewis's history demonstrates that he is willing to take medication when appropriate. Nor did his refusal to take the alternate medication provided by the FDC result in behavior that harmed himself or others. There is *zero* evidence that involuntary medication is needed to protect Mr. Lewis or others.

On the other hand, the harm caused by the force administration of medication is not insubstantial. The Supreme Court agrees:

> The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty. The purpose of the drugs is to alter the chemical balance in a patient's brain, leading to changes, intended to be beneficial, in his or her cognitive processes.... While the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects. One such side effect ... is acute dystonia, a severe involuntary spasm of the upper body, tongue, throat, or eyes.... Other side effects include akathesia (motor restlessness, often characterized by an inability to sit still); neuroleptic malignant syndrome (a relatively rare condition which can lead to death from cardiac dysfunction); and tardive dyskinesia, perhaps the most discussed side effect of antipsychotic drugs.... Tardive dyskinesia is a neurological disorder, irreversible in some cases, that is characterized by involuntary, uncontrollable movements of various muscles, especially around the face.

*Washington v. Harper,* 494 U.S. 210, 229-30 (1990).

Additionally, the proposed condition can only be monitored through blood testing, another significant bodily intrusion that implicates Mr. Lewis's constitutionally protected privacy interests. *Missouri v. McNeely,* 569 U.S. 141, 159 (2013) (finding that involuntary blood

9

tests are an unreasonable search and cannot be conducted in drunk-driving cases absent a warrant).

Governmental interests that may support an order for involuntary medication – the need to protect the individual and others from the individual's potentially dangerous behavior – are not present here. S*ee Riggins v. Nevada,* 504 U.S. 127 (1992); *Harper,* 494 U.S. at 225-26. The intrusion of forced medication and blood testing violates Mr. Lewis's constitutional rights and is not supported by any compelling government interest. Proposed condition 3 should not be imposed.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ Laura H. Suelau
LAURA H. SUELAU
Assistant Federal Public Defender
633 Seventeenth Street, Suite 1000
Denver, Colorado  80202
Telephone:  (903) 294-7002
FAX:  (903) 294-1192
laura.suelau@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    Rajiv Mohan, Assistant United States Attorney
    rajiv.mohan@usdoj.gov


and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Clifford Lewis (U.S. Mail)


    s/ Laura H. Suelau
    LAURA H. SUELAU
    Assistant Federal Public Defender
    633 Seventeenth Street, Suite 1000
    Denver, Colorado 80202
    Telephone: (903) 294-7002
    FAX: (903) 294-1192
    laura.suelau@fd.org
    Attorney for Defendant