IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-00268-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLIFFORD LEWIS,

    Defendant.

## RESPONSE TO VARIANCE MOTION

    The United States of America submits this response to defendant Clifford Lewis's variance motion, in which he requests a sentence of 46 months' imprisonment. This Court should instead impose a sentence of 60 months' imprisonment.

    **1.**    Lewis has little—in fact, nothing—to say about the nature of the circumstances of the offense here. Even if the Court concludes that Lewis did not possess a firearm in connection with another felony offense, it remains undisputed that he pulled out what appeared to be a gun and pointed it at a car. PSR ¶ 49. Whether he acted in what could plausibly be called self-defense or not, Lewis was a convicted felon who could not possess a firearm, let alone brandish one in public. In doing so, he created an increased risk of danger to the public, and illustrated precisely why felons are not allowed to possess firearms. Even if no sentencing enhancement applies, Lewis's conduct itself warrants a higher sentence.

    Not only that, when officers eventually searched Lewis's car, they found four

firearms and various firearm parts.  PSR ¶ 13.  They also found a number of suspected homemade silencers, one of which turned out to be a silencer under the technical definition, and a book entitled "How to Build Military Grade Suppressors."  PSR ¶ 16 & n.2.  And they found a "'cricket,' which is a small but dangerous improvised explosive (manufactured out of plastic tube with a large fuse coming out of the top)."  PSR ¶ 16.  The Northern Colorado Bomb squad was called in.

All to say, the nature and circumstances of the offense here—brandishing a firearm, possession of multiple firearms, possession of an improvised explosive, and so forth—reflect a heightened danger to the public than just a felon with a gun.

2. That leads to something else Lewis tries to minimize—his bond violations in this case.  The petition for revocation of bond alleged that Lewis failed to maintain residence at a sober-living house, Emmy's House, after his stay there was terminated based on failure to pay rent, possession of unauthorized objects, and welding without authorization.  Doc. 48 at 1-2.  His bond was revoked.  Doc. 58.  These bond violations occurred just months ago, and belie the notion Lewis is at a genuine turning point.

What Lewis has to say about the bond violations, in his objections to the presentence report, is that he "denies ownership of the items located in his room, a space he shared with other occupants of Emmy's House and accessible to all staff and clients of the house."  Doc. 75 at 1.

Lewis did not dispute that he violated bond as alleged in the petition.  Doc. 57.  The petition stated that, "[o]n February 16, 2021, a random room search was conducted in the defendant's living space … and the following items were confiscated:  three

switch blades (different sizes and double sided), three knives of different sizes, length and width, a double-sided machete, ammunition (.40 caliber), gunpowder and an open Narcan package." Doc. 48 at 1. The petition went on to say, "[t]he machete was found under the defendant's mattress and one of the knives was found under the defendant's pillow." *Id*. "The ammunition was found in a box, on top of the federal probation officer's business card." *Id.* Shared living space or not, if Lewis is seriously disputing possession of at least those items, it speaks volumes about his willingness to take responsibility for his actions, and hence his prospects for rehabilitation.

    **3.** Lewis makes a number of arguments in favor of a variance. He relies on his history and characteristics, namely, the adverse experiences he had in childhood. The government agrees that aspects of his upbringing are mitigating. That is why the government is requesting a variance by its estimate of the guidelines, or a sentence toward the lower end of the guideline by Lewis's and probation's estimate.

    That said, Lewis's adverse childhood experiences cut both ways. If, as Lewis argues, his criminal history is the "result" of those experiences (and substance abuse), and those experiences are "not something that simply resolve in time and age" then this Court should place less weight on his assurances that he is at a "turning point" and has "no choice but to stop his path of destruction." Doc. 77 at 3, 4. Given Lewis's criminal history, whatever its cause, those assurances rest in more hope than expectation.

    Lewis also says that imprisonment is not effective at deterrence. Doc. 77 at 6. This is a recurring argument in these cases, and it is not without some merit. Lewis's own criminal history attests to that: Repeated and significant terms of imprisonment

have not stopped him from committing more crimes.  But the alternative to imprisonment frequently offered, and offered here, is also inadequate to deter.  To wit, Lewis says, "proper substance abuse and mental health treatment" will stop him from committing more crimes.  *Id.* at 6.  But look at Lewis's history of supervision.  He has had mental-health treatment as part of supervision, and has participated in substance-abuse treatment "on numerous occasions while incarcerated and for court-ordered supervision[.]"  PSR ¶ 87, 98.  Despite that, he has continued to commit more crimes.  And as an adult he has had five probation revocations, one of which is pending, an unsatisfactory release from probation, and a pending case for bail-bond violations, to say nothing of the bond violations in this case.  PSR ¶¶ 44, 46, 57, 58, 60, 62.

Lewis also says that he is "naturally aging out of crime" and that "crime begins to decline steeply at age 35."  Doc. 77 at 6.  But he is 38 years old, and committed likely his most serious offense in this case.

At bottom, Lewis's adverse childhood experiences are mitigating to some extent.  But by his own theory of mitigation—that they are the cause of his criminal conduct—they also increase the risk he will commit crimes.  Combined with the past inadequacy of imprisonment and supervision to deter him from committing further crimes, this Court is left with the need to protect the public from his further crimes.  Given the heightened risk to the public that Lewis presented in this case, the government believes a somewhat higher sentence of 60 months is necessary to serve the sentencing factors.

Dated:  August 31, 2022	Respectfully submitted,

			COLE FINEGAN
			United States Attorney

			By:  s/ *Rajiv Mohan*
			Rajiv Mohan
			Assistant U.S. Attorney
			U.S. Attorney's Office
			1801 California Street, Suite 1600
			Denver, CO 80202
			Telephone: 303-454-0100
			Fax:  303-454-0406
			E-mail:  Rajiv.Mohan@usdoj.gov

5

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 31, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

Laura Suelau                                 Laura_Suelau@fd.org

By:  s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:  Rajiv.Mohan@usdoj.gov