1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF COLORADO

3    Criminal Action No. 21-cr-268-RBJ-1

4     UNITED STATES OF AMERICA,

5            Plaintiff,

6            vs.

7     CLIFFORD LEWIS,

8            Defendant.

9    -----------------------------------------------------------------

10                        REPORTER'S TRANSCRIPT

11                        Sentencing Hearing

12   -----------------------------------------------------------------

13           Proceedings before the HONORABLE R. BROOKE JACKSON,
     Judge, United States District Court for the District of
14   Colorado, commencing on the 23rd day of September, 2022, in
     Courtroom A902, United States Courthouse, Denver, Colorado.

15

16                             APPEARANCES
     For the Plaintiff:
17   RAJIV MOHAN, Assistant U.S. Attorney, UNITED STATES ATTORNEY'S
     OFFICE, 1801 California Street, Suite 1600, Denver, CO 80202

18

19
     For the Defendant:
20   LAURA H. SUELAU, FEDERAL PUBLIC DEFENDER'S OFFICE, 633 17th
     Street, Suite 1000, Denver, CO 80202

21

22

23

24
     Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
25   A259, Denver, CO 80294, (303)335-2358

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1                      P R O C E E D I N G S

2          (Proceedings commenced at 10:01 a.m.)

3              THE COURT:  This is 21-cr-268, United States versus

4    Clifford Lewis.  Set for sentencing.  Good morning.

5              MR. MOHAN:  Good morning, Your Honor.  Rajiv Mohan for

6    the Government.

7              THE COURT:  Thank you.

8              MS. SUELAU:  Good morning, Your Honor.  Laura Suelau

9    for Clifford Lewis.

10             THE COURT:  Thank you.  Good morning, sir.

11             THE DEFENDANT:  Good morning, Your Honor.

12             MS. JOHNSON:  Good morning, Your Honor.  Sarah Johnson

13   for probation.

14             THE COURT:  Hello, Ms. Johnson.  All right, then.

15   Defendant goes first.  Ms. Suelau?

16             MS. SUELAU:  Thank you, Your Honor.  I will begin with

17   my objections to the presentence report.  Fortunately, the

18   probation office has handled those objections.  Most of those

19   objections, or many of them are moot.  So, I will just start

20   with those that kind of remain, that being the four-level

21   enhancement to the offense level.

22             As I outlined, Mr. Lewis was never charged with felony

23   menacing.  So, what the Government is asking Your Honor to

24   consider is a sort of a post hoc analysis of a case that was

25   investigated at the time -- Mr. Lewis was charged with other

Kevin P. Carlin, RMR, CRR

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1  crimes at the time, and now saying Mr. Lewis committed this

2  offense.

3          And our position is that Mr. Lewis did not commit that

4  offense.  And if he did, he was acting in self-defense.  The way

5  that this went down, essentially, was that Mr. Lewis pulled into

6  the gas station to get away from a car that was following him

7  aggressively and too closely.  That can be seen on the video.

8  The car then went around the corner and pulled into the gas

9  station.  So, Mr. Lewis got out of his own vehicle to sort of

10 say, like, what is going on?  Who is this?  You know, confusion,

11 the whole thing.  And then that car tried to run him over.  The

12 Government --

13         THE COURT:  We don't know if the car tried to run him

14 over or not.  We don't know if this was a road rage situation or

15 not.  We just don't really know what happened.

16         MS. SUELAU:  We don't.  I think that there's good

17 evidence based on bystanders' statements saying the car tried to

18 run him over from the angle of the car in that they were, you

19 know, at the pump, sort of parallel to the pump, and then

20 Mr. Lewis is standing here, and then they pull this way to him.

21         THE COURT:  It's possible.  We don't know if that's

22 the case, what would have motivated that car to be mad at

23 Mr. Lewis, what the background was.  One thing we do know is

24 that whether it's a road rage, whether it's an attempted --

25 attempt to run him over, whatever it was, he shouldn't have had

21-cr-268-RBJ-1   Sentencing Hearing   09-23-2022

1   a gun, and he shouldn't have been pointing a gun, because he was

2   a convicted felon.  That we do know.

3   　　　MS. SUELAU:  Your Honor, two things on that.  Yes, he

4   should not have had a gun.  That's why we're here.  He's pled to

5   being a felon in possession of a gun.  At that time -- but we

6   are not conceding that at the time he had it -- the object that

7   was in his hand was a gun, and I don't think there's sufficient

8   evidence to support the notion that --

9   　　　THE COURT:  I think it probably was, but it doesn't

10   even matter.  I'm not probably going to go against you on the

11   added four levels, because I think there's enough gray there

12   that I give the benefit of the doubt to the defendant.  But I

13   think he probably had a gun.  I think what the people at the gas

14   station observed was probably right, but in terms of the

15   four-level addition, I am probably going to go your way on that.

16   　　　MS. SUELAU:  And I will just note that, you know, the

17   Government makes some point of saying there doesn't need to be a

18   victim, and that the driver didn't need to call in or report

19   anything, but that would certainly provide us the answers here

20   to what happened, and we don't have that information, as Your

21   Honor correctly pointed out, to elucidate what really happened

22   in this situation.

23   　　　THE COURT:  Your client knows, probably, what really

24   happened, but you and I don't.  He does.  But I will give him

25   the benefit of the doubt.

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1   MS. SUELAU:  Okay.  Then I will move on to the other

2 objections.  Regarding paragraph five, the probation office

3 addressed the objection appropriately and removed the

4 unsupported allegations.  I have no further argument on that.  I

5 think that --

6   THE COURT:  Probation basically went along with most

7 of what you were saying.  I don't think you have any bone to

8 pick with the probation report, frankly.

9   MS. SUELAU:  No.  So, I'm just saying for the record

10 with regard to paragraph five, that's been resolved.  With

11 regard to paragraph 17, again, that's been resolved to reflect

12 Mr. Lewis' position that items in the car belonged to other

13 individuals.  Paragraph 17, that has also been resolved

14 regarding the alleged affiliation, and with paragraphs 97 --

15 former 97, currently 99, I have nothing additional to add.  And

16 with special condition three, that objection is now moot.  So,

17 just wanted to get all that on the record, lest I forget.

18   And then I will move to what we believe is the

19 appropriate sentence in this case.  And that's a sentence of 46

20 months.  As I pointed out, under the parties' estimate in the

21 plea agreement, that would have been a within guideline

22 sentence.  Here it is an 11-month variance that Mr. Lewis is

23 requesting.  That's appropriate for several reasons.

24   THE COURT:  Well, at the plea agreement there was a

25 dispute about what the offense level was, and under your theory,

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1  it would have been 37 to 46.  The Government didn't agree with

2  that.

3          MS. SUELAU:  No.  But the Government's estimate was

4  also lower because of this criminal history category issue.

5          THE COURT:  Yes.  The estimate of the criminal history

6  at that time was three, but the estimate of the offense level

7  was 23 by the Government's view.  He came out kind of the same

8  way, but got there differently with lower offense level, higher

9  criminal history.

10         MS. SUELAU:  That's correct, Your Honor.  Nonetheless,

11  we believe that a sentence of 46 months is appropriate.  Looking

12  at Mr. Lewis' criminal history and characteristics, I will just

13  briefly summarize those factors outlined in my motion, which is

14  that Mr. Lewis witnessed domestic violence from a young age.  He

15  experienced parental instability and divorce, and then he

16  himself suffered sexual abuse.

17         And I do want to kind of make a note on that sexual

18  abuse, which is this is something that Mr. Lewis is just now

19  coming to terms with in the time since his bond revocation and

20  the sentencing.  As I noted, he was diagnosed with PTSD in

21  Denver County after -- in March of 2022, which is really the

22  first time that any mental health provider has addressed this

23  with Mr. Lewis.

24         He was then put on medication, which is really the

25  first time he felt that he had medication that alleviated some

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1   of the psychological pain he was suffering.  Mr. Lewis did not

2   mention the sexual abuse during his initial interview with the

3   probation office, because it's something that he has been so

4   sort of trained and programmed to stuff down.  It wasn't until I

5   spoke with his sister, Danae Lewis, and she brought it up to me

6   and outlined her recollection of what had happened to her

7   brother, and pointed to it as, you know, what might have been

8   the difference in her experience of these traumatic events in

9   childhood and Mr. Lewis' experience, and what might have led him

10  on the path that he's on versus her path.

11         And now Mr. Lewis is very -- realizes that as Danae

12  Lewis says, this could be the factor that he's not dealt with

13  that has led him to relapse and led him subsequently to this

14  offense ultimately.  He very much wants to deal with that and

15  intends to deal with that upon his release.

16         THE COURT:  The perpetrator of this abuse was what?

17  An uncle or something like that?

18         MS. SUELAU:  That's correct, Your Honor.  His paternal

19  uncle.

20         THE COURT:  Has the uncle admitted it?  Does he deny

21  it?

22         MS. SUELAU:  According to Mr. Lewis and Danae Lewis,

23  the uncle downplayed it and said things like, well, you know,

24  this ruse of I was just helping him drive.  And then later in

25  regards to the photographs of Mr. Lewis naked acted like that

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1   was a normal thing to do.  Clearly, neither are -- both are

2   abuse, whether he admits the intentionality or not, I suppose.

3        At the time the family didn't pursue charges.  Instead,

4   they essentially just cut out the paternal side of the family.

5   Which, you know, that consequence looked a bit different when

6   Mr. Lewis essentially had no more maternal side of his family

7   after his mother's death, and he's left with his father.  And at

8   that point, you know, didn't have the same sort of support

9   system he had at the time the abuse occurred.

10        So, I don't know what the uncle's exact position is,

11   but my understanding is that it was downplayed, and that the

12   family didn't pursue it further with law enforcement or really

13   with Mr. Lewis.  It was sort of conveyed, we confronted this, we

14   have stopped talking to him, and that's that.

15        But as we know with something that traumatic, is that

16   often is not that, and it's something that stuck with Mr. Lewis

17   in part because it's not been addressed appropriately.  And then

18   as I said, in the years after that, he suffered the death --

19   sudden death of his mother and neglect from his father, which

20   then shortly after led to his time in juvenile detention.

21        So, it's hard to imagine really another outcome in this

22   situation.  And following his release from the Department of

23   Youth Corrections, he has drug use and convictions that are

24   related to that drug and alcohol use, and what he admits is a

25   vicious cycle, one that he is very eager to end.  This offense,

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1    as I've noted, is his most serious by far, and it's been

2    something of a reckoning for him.  He's facing years in federal

3    prison.

4         He's also facing this consequence of his family,

5    including his sister and his wife saying we're done with you.

6    Until you demonstrate significant changes, you do not have our

7    support.  And so Mr. Lewis realizes that he has to make those

8    changes, or he effectively has no family.  Those are significant

9    consequences that he hasn't faced previously.  He knows this is

10   his last chance.

11        And just to briefly address the bond revocation,

12   because I know the Government sort of says it can't be that this

13   is a reckoning because he had this bond revocation.  Mr. Lewis

14   admits that he relapsed while on bond after a period of

15   sobriety.  He denies, you know, any other conduct, and obviously

16   no new offenses have arisen from any of the allegations that

17   were made, but he does admit that he suffered a relapse.

18        But there's something of a silver lining to it, which

19   is initially he was detained in Denver County Jail.  As I said,

20   he actually underwent a psychological evaluation, which he had

21   not had previously.  He had been in drug treatment but never

22   been given a psychological evaluation, and for the first time

23   was prescribed medication that actually worked for him, and he

24   realized, oh, this is how I can feel with the proper treatment.

25        Unfortunately, he was then transferred to FTC where

21-cr-268-RBJ-1     Sentencing Hearing     09-23-2022

1   they didn't have those medications, didn't offer psychological

2   services, and likewise at Fremont County.  But having had that

3   experience, he knows this is the path -- this is the beginning

4   of the path to rehabilitation for me.

5           THE COURT:  Do you see any irony, Ms. Suelau, in the

6   fact that you're touting these medications that have helped him,

7   but you're also objecting to the proposed bond condition -- or

8   supervised release condition that he be compliant with

9   prescribed medications?

10          MS. SUELAU:  No, Your Honor.  Because what his history

11  shows is that he is complying.  He doesn't need to be forced

12  compliance when he is prescribed appropriate medication.  So, I

13  don't think the willingness to take medication as he deems

14  appropriate for himself with the appropriate treatment provider

15  is inconsistent with objecting to the forced prescription of

16  medication.

17          THE COURT:  So, basically, he will choose which

18  prescribed medicines he cares to take and which ones he doesn't?

19          MS. SUELAU:  Well, Your Honor, a condition imposed by

20  this Court is also accompanied by blood testing and other things

21  that could be forced medication.  And that is a significant

22  deprivation of liberty, which is a big step up from working with

23  a treatment provider, as suggested in condition one and two.

24          I think that forced medication is imposed in cases to

25  rehab someone who, one, cannot function without medication, or

21-cr-268-RBJ-1     Sentencing Hearing     09-23-2022

1   two, has shown a history of noncompliance or things of that

2   nature.  We just don't have that here.

3            Finally, Your Honor, we would just request a

4   designation in the State of Colorado and a recommendation for

5   RDAP services while in the Bureau of Prisons.  With those

6   things, I believe that 46 months of incarceration is the

7   appropriate sentence in this case.

8            THE COURT:  Which of the facilities in Colorado offers

9   the RDAP?

10            MS. SUELAU:  Florence, Your Honor.

11            THE COURT:  So, he wants to go to Florence?

12            MS. SUELAU:  Your Honor, with his criminal history

13   category, he will not be eligible for Englewood.  Eventually he

14   may step down to Englewood.  They also offer RDAP, but at this

15   time, I don't believe that his Bureau of Prisons points are

16   compatible with Englewood.  So, eventually, he may step down and

17   take RDAP there.

18            THE COURT:  All right.  Thank you.  Mr. Lewis, would

19   you like to address the Court this morning?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  From the lectern, please.

22            THE DEFENDANT:  Good morning, Your Honor.

23            THE COURT:  Good morning.

24            THE DEFENDANT:  Mostly I would just like to apologize

25   to my family.  I deeply regret the actions that have led me down

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1   this road, and I know that I need to make some serious changes

2   in my life to get back out into the society and be a productive

3   member, and I'm ready to pursue those options.

4           THE COURT:  Well, I hope so, because you're 38 years

5   old, and you haven't been up to this point.

6           THE DEFENDANT:  Yes, Your Honor.  That's really all I

7   have to say.

8           THE COURT:  Thank you.

9           THE DEFENDANT:  Thank you.

10          THE COURT:  Mr. Mohan?

11          MR. MOHAN:  Thank you, Your Honor.  Enhancement, I

12  won't belabor the points made in my objections.  I do grant

13  there is a lot of gray area.  What I do think is black and white

14  and what I would push back on, the defense's argument is that I

15  do think there is sufficient evidence for this Court to conclude

16  that Mr. Lewis had a gun at the gas station, and that is based

17  not only on the video, not only on the witness reports, but the

18  recovery of handguns from his car a short while after the

19  incident at the gas station.  I think that is an important

20  circumstance of the offense that the Court can consider, along

21  with the number of firearms, the improvised explosive device,

22  and the like.

23          And I think all of that, whether or not the enhancement

24  applies, warrants a more significant sentence, given that this

25  was not just mere possession.  It involved something that posed

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1  a greater threat to the public.

2         With respect to Mr. Lewis' sort of eagerness to end

3  this cycle and the notion that this is a reckoning, you know, I

4  just -- I think the bond violation is important.  You know,

5  maybe there are some different consequences this time around in

6  terms of his family of willingness to stand by him and the like,

7  but I don't think those consequences are so dramatically

8  increased from the consequences he has faced before time and

9  time again.

10        And when you look at not only the bond revocation in

11 this case, but his record of noncompliance on supervision

12 overall, I think there is a higher risk that he will reoffend.

13 And given the nature of the offense in this case, I believe both

14 those factors warrant a slightly higher sentence.  Not

15 dramatically.  We're not years and years apart in this case.

16 We're about 14 months apart, but I do think --

17        THE COURT:  What are you recommending?

18        MR. MOHAN:  Sixty months, Your Honor.

19        THE COURT:  Sixty?

20        MR. MOHAN:  Yes.  And I do think that --

21        THE COURT:  Probation recommended 60 also.

22        MR. MOHAN:  Correct.

23        THE COURT:  But the defendant is recommending 46;

24 right?

25        MR. MOHAN:  Right.

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1        THE COURT:  So, you want a guideline sentence, but
2   sort of toward the bottom?
3        MR. MOHAN:  Correct.  Guidelines by probation's
4   estimate.  Obviously ours is higher, but I understand the Court
5   is not inclined to go in that direction.  But I do think that on
6   balance, a sentence at the lower end reflects the mitigating
7   factors here, but also gives due weight to the aggravating
8   circumstances of the offense.
9        THE COURT:  Okay.  Thank you.  Ms. Johnson?
10        MS. JOHNSON:  Good morning, Your Honor.
11        THE COURT:  Good morning.
12        MS. JOHNSON:  Probation, I stand by Ms. Coleman's
13   recommendation of the 60 months for the reasons that she stated
14   in her recommendation.
15        THE COURT:  Okay.
16        MS. JOHNSON:  Thank you.
17        THE COURT:  Thank you.  Has everybody who wants to be
18   heard now been heard?  All right.  Thank you.  Thank you for
19   your arguments, both in writing and here in court this morning.
20        Mr. Lewis is here because he was convicted of count
21   one, possession of a firearm and ammunition by a previously
22   convicted felon.  Statutory range is up to ten years in prison,
23   up to $250,000 in fines, up to three years of supervised
24   release.
25        The facts are that on April 29th of 2021, officers

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1   responded to a report at a gas station in Loveland of a man who

2   had been driving a green Dodge Durango with a trailer, was

3   pointing a gun at somebody in another car.  They found the green

4   Dodge Durango quickly.  The defendant, Mr. Lewis, matched the

5   description of the individual who pointed the gun there at the

6   gas station.  They searched the car and found a 12 gauge

7   shotgun, a .22 caliber revolver, a nine-millimeter pistol, some

8   homemade silencers, and a pipe bomb.

9          The firearms had of course traveled across state lines.

10  Mr. Lewis knew at the time he possessed those items, whether he

11  owned them or not, that he had previously been convicted of a

12  felony, and could not legally possess those items.

13         The Court has discussed the objections that were made

14  by both sides to the probation report.  The

15  non-guideline-related objections of the defendant have for the

16  most part been addressed by probation, and mooted.  To any

17  extent that they were not dealt with by modifications of the

18  draft report, they won't affect my sentence in any way.

19         As far as the calculation of the guidelines, the issue

20  there is whether he was using the firearm to facilitate the

21  offense of menacing.  If you have the gun and you're pointing

22  the gun at someone else, you can be convicted of menacing, and

23  if the Court were so inclined, it would add four levels to the

24  guideline offense level.  That is what the Government has urged

25  the Court to do.  Although at the same time, the Government is

21-cr-268-RBJ-1     Sentencing Hearing     09-23-2022

1   recommending a sentence that wouldn't be affected by the four

2   additional levels.

3          As I said to Ms. Suelau, I think he probably had a gun.

4   His history would tend to indicate that.  The number of weapons

5   in his car would tend to indicate that.  The fact that

6   eyewitnesses believe that he had a gun and was pointing the gun

7   would tend to support that.  The notion which is speculation on

8   the part of defense counsel that he might have been pointing a

9   cell phone, for example, is just that.  It's speculation, and I

10  think it's unlikely.  But at the end of the discussion, I am

11  inclined to deny the Government's objection and deny the request

12  that I add the four levels for possession in connection with

13  another felony offense.

14         I do that not because I don't think it was a gun, but

15  because the circumstances are not clear.  The circumstances

16  possibly could have involved either an attempt by the car to

17  assault the defendant, or a reasonable perception by the

18  defendant that that was occurring.  The pointing of the gun

19  could be thought of as self-defense.  I doubt it, frankly.

20         I was actually hoping that the defendant would stand up

21  before the Court, maybe for the first time, and acknowledge what

22  he did.  That might have been cathartic, and I wouldn't have

23  held it against him.  I would have in fact given him credit for

24  doing that.  He didn't, though.  But even so, I think there is

25  some gray area there.  He was never charged with felony

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1   menacing, and I am willing to give him that degree of lenity in

2   the circumstances.

3            Furthermore, I think all of us agree that -- all of us

4   except Ms. Suelau, at least, agree that the range that remains

5   even without asking -- or adding those additional levels is

6   reasonable in terms of the sentence.  So, the objection of the

7   Government is denied.

8            Now, looking to the factors affecting the sentencing,

9   the offense level under the guidelines is 19.  That's actually

10  what the defense was arguing for in the plea agreement.  The

11  Government was arguing for a higher level.  On the other hand,

12  the criminal history category is five.  The plea agreement was

13  estimating category three.  The result being the recommended

14  level under the guidelines of 57 to 71 months, which is what the

15  Government was arguing for in the first place, albeit for

16  different reasons.  I find that is the appropriate guideline

17  calculation, 57 to 71 months.

18           Now, moving on to other factors, because that guideline

19  is not binding on the Court.  The nature and circumstances of

20  the offense, the -- as I've said, the so called menacing part is

21  fuzzy and gray.  But what isn't fuzzy or gray is the fact that

22  this guy, who had prior felony convictions, not to mention many,

23  many other offenses, and had no business having a firearm, had

24  multiple firearms there in his vehicle.  That simply is

25  unacceptable behavior to the Court.  He's a danger to the

21-cr-268-RBJ-1     Sentencing Hearing     09-23-2022

1   community, and will continue to be as long as he thinks it's

2   cool to possess firearms.

3          History and characteristics of the defendant, a lot has

4   been said about the alleged sexual abuse that he sustained from

5   uncle.  That's reported in the probation report.  According to

6   what he has told the probation office, his uncle molested him in

7   two different ways.  One, when he was sitting on the uncle's

8   lap, sort of being given, as kids are, the opportunity to so

9   called drive by steering or turning the steering wheel.

10  Allegedly, the uncle groped him.  And then later, the uncle took

11  pictures of him when he was visiting without his clothes on.

12         Now, I'm not saying that didn't happen.  What I'm

13  saying is that it's alleged.  The defense in all these cases,

14  quite properly, asks the Court not to consider pending charged

15  offenses in sentencing, and I don't, because I do believe that

16  one is innocent until proven guilty.

17         So, by the same token, it has never been established

18  that this uncle did those things.  It's alleged that they

19  happened, but he too is innocent until proven guilty.  That's

20  why I ask whether he has ever acknowledged or admitted having

21  done that.  I'm not saying it didn't happen.  I'm not saying I

22  don't believe the defendant.  I'm just saying that the uncle

23  deserves the same innocent until proven guilty presumption that

24  I give every defendant that appears in my court.  But if it

25  happened, certainly that would be traumatic, and it's the type

21-cr-268-RBJ-1     Sentencing Hearing     09-23-2022

1  of thing that could come up after being repressed for many

2  years.

3          There are some other things in the personal history

4  here.  His mother died when he was only 15 years of age, and

5  that was traumatic because he was close to her.  He dropped out

6  of school and got in with the wrong people, as often happens,

7  started to get into trouble.  Despite his troubles, his father

8  has been supportive of him, but still, he didn't have the kind

9  of upbringing that many people have.

10         He's had children with different women, three in all.

11  He's married now.  He's had some mental health issues.  He's had

12  substance abuse issues.  The overall picture is that some of

13  these things contribute to the trouble that he's gotten in over

14  the years.  And by the same token, he's 38 years old now, and

15  you can go back and cite things that happened in your youth as

16  explanations for your criminal behavior only so long.  The

17  Government nevertheless has taken it into consideration in its

18  recommendation, and the Court takes it into consideration as

19  well.

20         On the other side of the coin, he's had lots of

21  criminal trouble as a juvenile.  He had thefts, motor vehicle

22  thefts, drug issues as an adult, lots and lots of DWAI, DUIs,

23  disturbing the peaces, things like that.  Violation of

24  protection orders, much of which is related to substance abuse.

25  He even got a felony conviction, his first, for DUI with three

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1    or more priors.  That in and of itself makes him dangerous even

2    apart from the firearms.

3         His other felony was violation of bailbond conditions,

4    and that fits into another problem in his criminal history, and

5    that is he really pays very little attention to compliance with

6    court orders or probation, people like that.  The most recent

7    example being that he was given a release from custody on bond

8    in this very case, and he violated his bond conditions at the

9    sober living facility.

10        In the documents, Ms. Suelau says he's had the turning

11   point in his life, and he's going to be on the straight and

12   narrow in the future, but the Government points out, and I

13   agree, that that is inconsistent with what we see in the record.

14   This offense, for example, all the weapons in his vehicle,

15   violation of bond conditions, the fact that he was doing various

16   things over at the ME's house that was sufficient to getting

17   kicked out, his poor response to supervision.

18        I hope it's time.  I hope he decides that it's time to

19   straighten up.  At the age of 38, it's about time.  And if he

20   doesn't, then he's going to spend most of the rest of his life

21   incarcerated, but we will see.  I am skeptical but hopeful.

22        In terms of fair and appropriate sentence, given his

23   criminal history, his past performance on community supervision

24   and so forth, I would not consider a variance in this case.  You

25   have to have a good reason to vary below the guidelines, and

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1    there is none here.

2              As far as within the guidelines is concerned, I don't

3    think the bottom of the guidelines is appropriate.  I don't

4    think the top of the guidelines is appropriate.  But given all

5    of this information that I have, I think something in the middle

6    of the guidelines is appropriate.

7              Therefore, the Court will sentence the defendant to 64

8    months in federal prison, three years of supervised release.  No

9    fine.  Terms of supervised release conditions, only three, that

10   he get substance abuse treatment as appropriate, that he get

11   mental health treatment as deemed appropriate.

12             I won't order that he be medicated against his will,

13   although I am concerned that he's made an issue of that.  The

14   medications will be prescribed by physicians trying to help him,

15   but if he doesn't want the help, that's up to him.

16             The search condition is imposed, and the other

17   conditions of supervised release, mandatory and standard, in

18   addition to special conditions I have just gone over, are

19   ordered by the Court.

20             And the Court will recommend that he go to a facility

21   with an RDAP program.  That's up to the Bureau of Prisons.  The

22   Court will recommend that he go to the facility in Florence,

23   Colorado.  Again, that's up to the Bureau of Prisons.

24             He will have to pay a 100-dollar special assessment

25   fee.  He has a right to appeal within 14 days of the entry of

21-cr-268-RBJ-1    Sentencing Hearing    09-23-2022

1  judgment, subject to the terms of his plea agreement.  Is there

2  anything else?

3          MR. MOHAN:  No, Your Honor.

4          MS. SUELAU:  No, Your Honor.  Thank you.

5          THE COURT:  Ms. Johnson, anything further?

6          MS. JOHNSON:  No, Your Honor.  Thank you.

7          THE COURT:  Marshals, thank you.  He's given back to

8  you.  Good luck, sir.

9      (Proceedings concluded at 10:36 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, KEVIN P. CARLIN, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Merit Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true, and correct transcript.

Dated this 28th day of October, 2022.




_____
Kevin P. Carlin, RMR, CRR
Official Court Reporter

Kevin P. Carlin, RMR, CRR